Stephen L. Martino, Executive Director Kansas Racing and Gaming Commission 700 W Harrison, Suite 420 Topeka, Kansas 66603
Dear Mr. Martino:
You inquire as to the scope of the statute prohibiting certain public officials from using their official authority to influence the decisions, investigations, and proceedings of those governmental entities responsible for administering the Kansas Expanded Lottery Act [KELA]. The statute in question, K.S.A. 2007 Supp. 74-8762 provides, in part:
 "(e) No state or local official shall influence, or attempt to influence, by use of official authority, the decision of the Kansas lottery commission, lottery gaming facility review board or Kansas racing and gaming commission pursuant to this act; the investigation of a proposal for a lottery gaming facility or racetrack gaming facility pursuant to this act; or any proceeding to enforce the provisions of this act or rules and regulations of the Kansas lottery commission or Kansas racing and gaming commission. Any such attempt shall be reported promptly to the attorney general.
 "(f) Willful violation of this section is a class A misdemeanor."[1]
Before we answer your specific questions, we review this provision which is one section of a larger statute that addresses conflicts of interest between public officials and gaming interests.[2]
Subsection (e) of this statute is fairly straight-forward. It prohibits a "state or local official"[3] from using his or her "official authority" to influence or attempt to influence certain decisions that the legislature has entrusted to the Kansas Lottery Commission (Lottery), the Lottery Gaming Facility Review Board (Review Board) and the Kansas Racing and Gaming Commission (KRGC). Additionally, it prohibits a state or local official from using his or her "official authority" to influence or attempt to influence investigations of the proposals submitted for facility management contracts and any proceedings to enforce the KELA and regulations promulgated by the Lottery and the KRGC.
In order to better understand what decisions, investigations, and proceedings fall within the scope of this prohibition, it is necessary to review the authority of these entities in their implementation of the KELA.[4]
I. The Lottery
The Lottery is responsible for reviewing all proposals for lottery gaming facility management contracts and approving management contracts with one or more prospective lottery gaming facility managers to construct and manage lottery gaming facilities at specified locations in the state.[5]
The Lottery cannot approve a lottery gaming facility management contract unless the prospective manager meets certain statutory requirements relating to experience, investment capability, financing, local endorsements and a variety of other items.[6] In deciding whether to approve a particular contract, the Lottery must also consider factors relative to facility size, the geographic area where the facility will be located, the proposed location as a tourist and entertainment destination, the estimated number of tourists, the number and type of lottery facility games, and agreements related to ancillary lottery gaming facility operations.[7]
The Lottery is also responsible for contracting with racetrack gaming facility managers to place electronic gaming machines at parimutuel licensee locations.[8] As with lottery gaming facility management contracts, prospective racetrack gaming facility managers must meet certain statutory requirements, and the contracts must address certain requirements enumerated in the KELA.[9]
II. The Review Board
After approval of the lottery gaming facility management contracts, the Lottery executes the contracts with the lottery gaming facility managers.[10] However, none of the contracts are binding until the Review Board selects the "best possible . . . contract" for each gaming zone and such contract is approved by the KRGC.[11]
To determine which contract "best maximizes revenue, encourages tourism and otherwise serves the interests of the people of Kansas,"[12] the Review Board is charged with conducting public hearings, taking testimony, soliciting the advice of experts and investigating the merits of each contract.[13] The Review Board then selects by public vote the lottery gaming facility management contract that it determines is the "best possible."[14]
III. The KRGC
The contracts selected by the Review Board must be approved the KRGC. In determining whether to do so, the KRGC conducts background investigations of the officers, directors, and any other person with an interest in the lottery gaming facility manager.[15] Upon completion of the investigation, the KRGC votes to approve or reject the Review Board's recommendation.[16]
The KRGC is also responsible for approving any racetrack gaming facility management contracts approved by the Lottery.[17] As with the lottery gaming facility management contracts, the KRGC conducts background investigations of the proposed racetrack gaming facility manager, its officers, directors, employees, owners, agents and contractors.[18] Upon completion of the investigation, the KRGC votes to approve or reject the contract.[19]
IV. Enforcing the KELA
The Lottery and the KRGC, as well as their respective executive directors, have varying degrees of authority to implement, administer and enforce the KELA by virtue of the management contracts, regulations, and provisions of the KELA itself.
The KRGC oversees all lottery gaming facility operations, including oversight of internal controls, security, background investigations, credentialing of employees and contractors of lottery facilities, enforcing state law and maintaining the integrity of gaming operations.[20] Its executive director can "take any action as may be reasonable and appropriate to enforce the provisions of the Kansas expanded lottery act and any rules and regulations, orders and final decisions of the executive director of the Kansas lottery, the Kansas lottery commission, the executive director of the Kansas racing commission or the Kansas racing and gaming commission."[21]
The KELA states that the the Lottery has "full, complete and ultimate ownership and operational control of the gaming operation" of each lottery gaming facility and retains "full control" over all decisions concerning lottery gaming facility games.[22] The Lottery's executive director has the general responsibility to implement and administer the KELA provisions relating to racetrack gaming facility operations[23]
and can inspect electronic gaming machines, lottery facility games, and gaming facilities.[24] The executive director can order the deactivation of any or all electronic gaming machines at any time.[25]
Clearly, both the Lottery and the KRGC — as well as their respective executive directors — are authorized to enforce the KELA and any regulations implementing it.
V. Applying the Prohibition of K.S.A. 2007 Supp. 74-8762(e)
In light of the authority of the various entities that play a role in expanded gaming, it would appear that an individual who qualifies as a "state or local official" is prohibited from using his or her official authority to attempt to influence or influence the following activities:
1. The decision of the Lottery in approving and executing facility management contracts with proposed lottery gaming facility managers and racetrack gaming facility managers.
2. The decision of the Review Board in selecting the lottery gaming facility management contract in each gaming zone.
3. The decision of the KRGC in approving or rejecting the lottery gaming facility management contracts selected by the Review Board.
4. The decision of the KRGC in approving any racetrack gaming facility management contracts approved by the Lottery.
5. Investigations by the Lottery to examine proposals for lottery gaming facilities and racetrack gaming facilities. K.S.A. 2007 Supp.74-8762(e) prohibits a state or local official from using his or her official authority to influence or attempt to influence "the investigation of a proposal for a lottery gaming facility or racetrack gaming facility pursuant to [KELA]."[26] Under the KELA, the Lottery reviews such "proposals" and executes facility management contracts[27] that are then reviewed by the Review Board.
6. Proceedings initiated by the Lottery, the KRGC, or the executive directors of either agency to enforce the KELA and the regulations promulgated by both agencies.
Whether a state or local official uses his or her "official authority" to influence or attempt to influence one of the above-referenced decisions, investigations, or enforcement proceedings will be a question of fact. However, we note that the prohibition applies only to use of the person's "official authority." Accordingly, the statute would not preclude a state or local official from testifying or offering public comment in proceedings before the Lottery, the Review Board, and the KRGC in his or her capacity as a private citizen.
For example, as indicated above, the Review Board is charged with conducting public hearings, taking testimony, soliciting the advice of experts and investigating the merits of each contract[28] for the purpose of assisting its members in selecting a lottery gaming facility management contract for each gaming zone.[29] Assuming the individual is a "state or local official,"[30] he or she can testify or comment at any public hearing in which the general public is allowed to do so.
While there are no appellate decisions construing this provision or the New Jersey statute which served as a template,[31] it appears that the provision is designed to protect the integrity of certain decisions, investigations and proceedings that fall within the realm of the Lottery, the Review Board and the KRGC by ensuring that these decisions and the outcome of investigations and proceedings are based upon the merits rather than swayed by certain public officials.
The statute would not bar state or local officials from using their official authority to influence most decisions made by these entities — just those decisions listed in this section.
VI. Responding to Specific Questions
Before responding to your specific questions, please note that: (1) whether or not a state or local official has violated K.S.A. 2007 Supp.74-8762(e) will depend upon the facts; and (2) prosecution is a discretionary decision. Moreover, only "willful" violations are subject to prosecution.[32] "Willful" means "voluntary and intentional."[33]
Finally, to the extent that any legitimate ambiguity lingers in this statute, we believe that a court will interpret it in light of the rule of lenity.[34] Under this rule, penal statutes, including laws establishing criminal liability,[35] are narrowly construed in favor of the defendant so that citizens are accorded fair notice of conduct that is criminal.[36]
With these caveats in mind, we address your questions:
1. Whether a state or local official may give public comment or testimony before either the KRGC or the Review Board.
Answer: The prohibition of K.S.A. 2007 Supp. 74-8762(e) applies only to the use of official authority to influence or attempt to influence the decisions, investigations and proceedings identified in Section V of this opinion. However, should a state or local official wish to give public comment or testimony on a matter before the KRGC or the Review Board, the prohibition would not prohibit such official from providing public comment or testimony in his or her capacity as a private citizen.
2. Whether a state or local official may speak outside of a public meeting with a member of the KRGC or the Review Board.
Answer: The answer depends upon the context: i.e. what is said and the subject of the communication as the prohibition applies only to the subject matter listed in Section V.
3. Whether a state or local official may speak outside of a public meeting with the staff of the KRGC or the Review Board regarding a matter pending before the KRGC, Review Board, or the executive director of the KRGC.
Answer: Again, it depends upon the context of the communication:i.e. what is said, how it is said, to whom and what the pending matter concerns. The prohibition applies only to the subject matter listed in Section V.
4. Whether it is a violation of this provision for a state or local official to recommend the hiring of an individual by the KRGC.
Answer: No.[37] As previously indicated, only the activities listed in Section V are subject to the prohibition in K.S.A. 2007 Supp.74-8762(e).
5. Whether a state official would be in violation of this provision if he or she testifies, appears or otherwise attempts to influence the action of a local unit of government in that government's obligations under the KELA.
Answer: This question refers to the KELA's requirement that a lottery gaming facility management contract not be approved by the Lottery unless there is a "resolution of endorsement" from the city governing body, if the proposed facility is within the corporate limits of the city, or from the county commission, if the proposed facility is located in the unincorporated area of the county.[38]
The KELA dictates no procedure for endorsement and, considering the extensive home rule powers of cities and counties, we have previously opined that it is within the discretion of each municipality to establish its endorsement criteria.[39]
K.S.A. 2007 Supp. 74-8762(e)'s prohibition applies to "the investigation of a proposal for a lottery gaming facility or racetrack gaming facility pursuant to this act."[40] "Proposal" is used in the KELA only in the context of the Lottery's investigation of proposals.[41] Accordingly, the prohibition does not apply to a city or county endorsement process.[42]
6. Whether there is any permissible manner in which a state or local official can advocate, testify, appear or otherwise attempt to influence a matter or possible action by the KRGC, Review Board or the executive director of the KRGC.
Answer: See answers to questions one, two and three.
Sincerely,
Stephen N. Six Attorney General
Mary Feighny Deputy Attorney General
[1] Emphasis added.
[2] State and local officials cannot: (1) be employed or hold interests in lottery gaming facilities/racetrack gaming facilities; (2) represent or negotiate on behalf of an applicant for a gaming facility contract; (3) accept complimentary services from an applicant or a gaming facility manager when the service is not offered to members of the public. K.S.A. 2007 Supp. 74-8762
[3] Defined at K.S.A. 2007 Supp. 74-8762(a)(2)(A)-(F).
[4] K.S.A. 2007 Supp. 74-8733 et seq.
[5] K.S.A. 2007 Supp. 74-8734(d).
[6] K.S.A. 2007 Supp. 74-8734(g).
[7] K.S.A. 2007 Supp. 74-8734(e).
[8] K.S.A. 2007 Supp. 74-8740.
[9] K.S.A. 2007 Supp. 74-8741.
[10] K.S.A. 2007 Supp. 74-8736(a).
[11] The proposed lottery gaming facility manager must also have the endorsement of the city or county where the proposed facility will be located. K.S.A. 2007 Supp. 74-8736(a).
[12] K.S.A. 2007 Supp. 74-8736(b).
[13] Id.
[14] K.S.A. 2007 Supp. 74-8736(d)(1). If the Review Board cannot reach an agreement, it can request the executive director of the Lottery to renegotiate the contract(s). K.S.A. 2007 Supp. 74-8736(d)(2).
[15] K.S.A. 2007 Supp. 74-8736(e).
[16] Id.
[17] K.S.A. 2007 Supp. 74-8742.
[18] Id.
[19] Id. If the contract is rejected, the KRGC shall notify the executive director of the Lottery and make recommendations regarding negotiation of the contract.
[20] K.S.A. 2007 Supp. 74-8734(h)(18); 74-8751; 74-8772.
[21] K.S.A. 2007 Supp. 74-8752(b)(5).
[22] K.S.A. 2007 Supp. 74-8734(h)(17), (n)(1)(2).
[23] K.S.A. 2007 Supp. 74-8744. The executive directors of the Lottery and the KRGC may remove from play any electronic gaming machine or gray machine not in compliance with the KELA. K.S.A. 2007 Supp.74-8750(d).
[24] K.S.A. 2007 Supp. 74-8752(a). The KRGC executive director can do likewise.
[25] K.S.A. 2007 Supp. 74-8749(a)(4).
[26] Emphasis added.
[27] K.S.A. 2007 Supp. 74-8734(b); 74-8736(a)(f).
[28] K.S.A. 2007 Supp. 74-8736(b).
[29] K.S.A. 2007 Supp. 74-8736(d)(1). If the Review Board cannot reach an agreement, it can request the executive director of the Lottery to renegotiate the contract(s). K.S.A. 2007 Supp. 74-8736(d)(2).
[30] See Attorney General Opinion No. 2007-33 ("local official" includes only those governing body members in cities or counties where a lottery gaming facility/racetrack gaming facility is located.)
[31] N.J.S.A. 52:13D-17.2(g).
[32] K.S.A. 2007 Supp. 74-8762(f).
[33] Black's Law Dictionary 1630 (8th ed. 2004).
[34] State v. Zeit, 2008 WL 900658 (Kan.App. 2008).
[35] State v. Rupnick, 280 Kan. 720, 735 (2005).
[36] State v. Busse, 252 Kan. 695, 699 (1993).
[37] We have not researched and offer no opinion whether such recommendation would run afoul of any other statute or regulation regarding hiring of state employees.
[38] K.S.A. 2007 Supp. 74-8734(h)(10); 74-8736(a); see Attorney General Opinion No. 2008-5.
[39] Attorney General Opinion No. 2008-5.
[40] Emphasis added.
[41] K.S.A. 2007 Supp. 74-8734(b); 74-8736(a).
[42] K.S.A. 2007 Supp. 74-8734(h)(10); 74-8736(a).